D. K. ESTE FISHER AND THE MERCANTILE
TRUST AND DEPOSIT COMPANY OF BALTI-
MORE, Receivers, *vs.* HENRY A. PARR, EDWIN
F. ABELL, JOHN B. McDONALD et al.

*Liability of Directors of a Corporation for Negligence in the Conduct
of the Business—Loans to Stockholders Insufficiently Secured and in
Violation of Statute—Duty of Corporate Managers—Jurisdiction of
Equity—Parties to Bill to Enforce Personal Liability of Directors
—Sufficiency of Allegations of Bill—Proceeding in Personam
Against Non-Residents—Associations for the Loan of Money—Con-
struction of Code, Art. 23, Sec. 69.*

Equity has jurisdiction of a bill filed by a corporation, or by its receivers
when insolvent, to enforce the personal liability of the directors of the
corporation for negligence in the performance of their duties.

Directors or managers of a corporation are required to perform their
duties with reasonable skill and care, and are answerable for neglect to
exercise that degree of prudence that men generally exercise in their
own affairs under like circumstances.

It is not enough that directors employ officers and agents of good char-
acter and skill, but the conduct of the agents must be watched with
such vigilance as a discreet business man would exercise over his own
affairs.   The directors are liable if they suffer the corporate property to
be lost by gross inattention to the duties of their trust, and are not re-
lieved from liability because they had no actual knowledge of wrong-
doing, if that ignorance was the result of gross negligence.

If all the directors are guilty of negligence all are equally liable, but if
only some have been negligent, each will be held liable for the conse-
quences of his own negligence.

Upon a bill to make directors of a corporation personally liable for losses
occasioned by their negligence or misconduct in the discharge of their
duties, it is not necessary to make certain non-resident directors parties
to the bill.

When a proceeding is *in personam* neither constructive notice of the suit
by publication nor actual service of process beyond the State can oper-
ate to give the Court jurisdiction over non-resident defendants.

A bill in equity by the receivers of an insolvent corporation against cer-
tain directors of the corporation alleged that illegal investments of the
funds of the company were made by the board of directors of which
each director had notice ; that such investments were unsuitable to the

business of the company and unreasonably hazardous ; that loans amounting to several hundred thousand dollars were made by the corporation through the finance committee, with the assent of the directors, to certain of its stockholders, some of whom were also its officers, the same being insufficiently secured and such as no ordinarily prudent man would have sanctioned, and after a protest against the same had been made by a previous executive committee and in violation of statute. The dates and amounts of the loans and the names of the persons to whom made were set forth. The bill also alleged that four of the defendants were members of the board when the loans were made and that all of the defendants were guilty of negligence in failing to ascertain and disclose facts which demonstrated the unfitness of the officers making such illegal loans. The bill alleged that the defendants are responsible to the receivers for losses incurred in consequence of loans or investments so made in violation of the charter of the company and without such reasonable care as an ordinarily prudent man would have used. *Held,*

1st. That a demurrer to the whole bill and as to all the defendants must be overruled, since the bill specifically charges such violation of duty on the part of all the defendants as to require them all to answer.

2nd. That the bill is not defective on the ground that it states inferences of law and not facts, since the allegation of negligence as applied to the acts of the defendants is not a conclusion of law, but the statement of a fact.

In such bill it is not necessary to allege that all the defendants attended and participated in the meetings at which the said loans were authorized, nor to allege the extent to which each director contributed to the loss, because the bill alleges that the board of which the defendants were members did the acts complained of, and upon demurrer the bill must be taken as alleging that each member of the board committed the acts and all the directors are *prima facie* liable.

*Code,* Art. 23, sec. 69 provides that no loan of money shall be made by "any such corporation" to any stockholder therein and that if any loan be made to a stockholder, the officers making it or assenting thereto shall be jointly and severally liable for the debts of the corporation contracted prior thereto to the extent of double the amount of such loan. This provision is made not to apply to building asssociations, or associations for the loan of money on real or personal property or to savings institutions. Upon a bill to enforce the personal liability of certain directors of the Casualty Insurance Company for losses resulting from loans made by the board of directors to stockholders it was contended by the defendants that the above mentioned provision was not applicable because the company was incorporated under *Code,* Art. 23, sec. 113, which gave to it power to advance money, securities and credits upon any property, real or personal, according to the charter or by-laws, and also because said section 69 applies only to corporations referred to in the preceding sections of Art. 23. *Held,*

1st. That section 69 applies to all corporations formed under Article 23. of the Code, except those expressly exempted in section 69 from its. operation.

2nd. That the power to advance money, etc., conferred by section 113,. does not bring the Casualty Company, incorporated thereunder, within. the exception contained in section 69 as to loans to stockholders, since that refers to corporations whose, principal business is to loan money, while sec. 113 contemplates corporations of a different character, such as insurance, guaranty and storage companies incorporated thereunder, which are authorized to make advances on real property committed to their charge or on personal property deposited with them.

3rd. That the loans alleged in the bill to have been made by the directors. of the Casualty Company were made in violation of sec. 69, which declared the duty of the directors.

Appeal from a decree of the Circuit Court of Baltimore City (WICKES, J.), sustaining a demurrer to the bill of complaint in this case and dismissing the same.

The cause was argued at the April Term, 1900, and was subsequently reargued by order of the Court at the October Term, 1900, before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Bernard Carter* and *Charles J. Bonaparte* for the appellants:

The insolvency of the corporation and the heavy losses thus caused to its creditors and stockholders is shown by the bill of complaint to be due, and due *only* to the fact that, having obtained subscriptions from the stockholders and premiums from the policy holders *nominally* for the purposes stated in its charter, the directors of this corporation simply *distributed* this great sum of money, in the guise of "loans," to a few of their own number and a few more of the stockholders.

The bill of complaint further shows that this misappropriation of the corporate assets was made in the face of an unequivocal and earnest protest on the part of the minority of the directors; for on May 18, 1891, when "loans" to the extent of only $60,700 had been thus made, of which sum the greater part had been "lent" to William E. Midgeley, then president of the company, certain of the directors of the

corporation, namely, Messrs. Charles D. Fisher, William W. Spence, James A. Gary, John Gill and Edward Austin, who then constituted a majority of the executive committee of the board of directors, at a meeting of that committee adopted a resolution in the following words :

"Whereas, under the laws of Maryland, no loan of money shall be made by any such corporation to any stockholder thereof, and if any loan shall be made to any stockholder, the officer or officers who shall make it, or who shall assent thereto, shall be jointly and severally liable for said loan to the extent of double the amount of said loan ; in view of the aforesaid law, the members of the executive committee hereby enter their protests against the loans made to William E. Midgeley and request that they may be returned, and that in future no other loans be made to any stockholders of this company."

And upon the subsequent overruling of this protest by the board of directors, as set forth in the bill, and in consequence thereof, four of the five thus protesting, and also Hon. William A. Fisher, who was likewise a director at the time, resigned their offices, the defendants, A. Leo Knott, Edwin F. Abell, John M. Littig, John B. McDonald and Henry A. Parr, being chosen to fill the vacancies in this board thus caused.

The company's charter contains the following provisions : " Investments of the funds of this corporation shall be made in the securities required by the laws and statutes of the several States in which the said company shall do business, and where no such requirement exists shall be made in such securities as the board of directors shall from time to time determine, but such investments shall always be in accordance with the laws of the State of Maryland."

And the bill of complaint charges that the " loans " which thus caused the protest and resignation of the above-mentioned five directors as well as the enormous " loans " subsequently made : " Constituted investments of the funds of the corporation, not in accordance with the laws of the State of Maryland, but on the other hand, clearly and positively for-

bidden by Article 23, section 69, of the Code of General Public Laws of this State, and likewise clearly and positively forbidden by section 18 of the same article of the Code aforesaid, if the above-mentioned corporation could be considered an association for the loan of money on real or personal property."

It appears from examination of the causes of demurrer that substantially *three* questions were before the Circuit Court, namely :

(1.) Did the bill state a ground of action against all of these defendants arising from a breach of their *general* duty as directors ?

(2.) Did the bill state a ground of action against all of these defendants arising from a breach of any *special* duty imposed on them as directors by the charter of the company, construed in connection with the general law ?

(3.) Was the suit barred by the Statute of Limitations ?

The general duty of directors of corporations would seem to be sufficiently established for the purposes of this case by the decision in *Booth* v. *Robinson*, 55 Md. 419, and especially by the language of this Court, on pages 436 and 437. See also *Robinson* v. *Smith*, 3 Paige Ch. 222; *Wilkinson* v. *Dodd*, 40 N. J. Eq. 123; 1 *Morawetz, Private Corp.*, sec. 522; *Horn Silver Mining Co.* v. *Ryan*, 42 Minn. 196; *Williams* v. *McKay*, 40 N. J. Eq. 189; *Williams* v. *McDonald*, 42 N. J. Eq. 392; *Dodd* v. *Wilkinson*, 42 N. J. Eq. 647; *Williams* v. *McKay*, 46 N. J. Eq. 25; *Hun* v. *Cary*, 82 N. Y. 65; *Robinson* v. *Hall*, 63 Fed. Rep. 222.

In view of the authoritative statements of the law applicable to this question contained in these cases, it is confidently submitted that enough is alleged and admitted by this demurrer to establish the responsibility of all of the defendants for loss arising from investments of the company's funds, which were "*unsuitable to its business, unreasonably hazardous, insufficiently secured and such as no ordinarily prudent man, endeavoring conscientiously to discharge his duties as a director thereof, would have sanctioned or approved,*" and which were made while they were all members of the board.

It may be possibly urged that the bill does not set forth in so many words that the several defendants attended the different meetings of the board of directors at which these loans were authorized or approved, nor that these defendants voted for such authorization or approval at these meetings. In reply to any such contention, it is sufficient to say that *prima facie* the act of the board of directors is the act of *each one of its members*, for it is the duty of *every* director to attend *every* meeting, unless prevented by sufficient cause, and the existence of such cause, if any there was to justify his absence, is a matter of defense which ought· properly to be asserted by · *him*, and not *denied in advance*, by the party charging him with a dereliction of duty. In the case of *Wilkinson* v. *Dodd*, 40 N. J. Eq. 123, already cited, the Vice-Chancellor says of a similar contention : " With me this is not a debatable question. In the case of *Williams* v. *McKay*, * * * the Court of Errors and Appeals have settled it, holding that in such cases, upon demurrer, *all the managers are prima facie liable.*"

Upon the same principle in the case of *Horn Silver Mining Company* v. *Ryan*, cited *supra*, the Court says: "It was not necessary that it should be alleged in the complaint that the stockholders had no notice of the defalcation, and did not acquiesce in the same. If the acts of the directors have been acquisced in or sanctioned by the stockholders that will be matter of defense."

In like manner here, if there is any possible excuse which can be used on behalf of any one of these directors for his failure to prevent the gross breaches of trust on the part of the board which resulted in the ruin of the company, he can allege this fact in his answer ; but it may be noted that it will not be sufficient for him to allege merely that he was not present when these ruinous investments were sanctioned, or even that he never discovered their existence.

If it be urged that the bill does not negative the *possibility* that any of these defendants may have voted *against* the approval of some or all of the loans alleged, the same double

reply can be made, for, in the first place, it is for *him* to show that he *did* vote against them, not for the complainants to show that he *did not;* and, secondly, even if he could show this, that would not be enough to exhonerate him, for the bill charges that—"No protest against, and no exposure of, the said proceedings was made by any one of the officers or directors of the said corporation."

Now it is well-settled law that "A director is personally liable for any act of the board for which he votes, or, if present, and he does not oppose it, for any loss caused by a resolution in open violation of the charter, or any act which he does not fairly labor to avert ; if absent, he is equally responsible in case of extreme neglect in attending the board, or, if after the act comes to his knowledge, or must have done so had he used due diligence, he does not labor to avert its injurious consequences." *Percy* v. *Millaudon*, 3 La. 568.

It was emphatically the duty of these directors, not only to vote against the monstrous proceedings of the board, but to fully inform the stockholders how grossly the trust committed to it had been abused. Yet they wholly failed to do this, according to the allegations of this bill.

As to the suggestions that the bill in its charges states, not facts, but "inferences of law." It may be presumed that this refers to the allegations of culpable negligence above mentioned. Now it is well-known law that "an allegation of negligence as applied to the conduct of a party is not a mere conclusion of law, but a statement of an ultimate pleadable fact," which is admitted by a demurrer to be true. *Rolseth* v. *Smith*, 38 Minn. 17.

"A declaration is sufficient to withstand a demurrer for want of facts which characterizes the act complained of as having been carelessly or negligently done, and it is not in what the stated negligence consists ; for when the only averment directly affecting the question of negligence is that a person did an act negligently or the opposite, and no facts are stated from which negligence or the lack of it can be inferred, the averment must be regarded as one of fact." *Washburn* v.

*Railway Company* (Wis.), 32 N. W. Rep. 234; *Railway Company* v. *Jones* (Ind.), 9 N. E. Rep. 476; *Wilson* v. *Railroad Company* (Colo.), 2 Pac. Rep. 1; *Clark* v. *Railway Company* 28 Minn. 69; *Lucas* v. *Wattles* (Mich.), 13 N. W. Rep. 782; *Keating* v. *Brown* (Minn.), 13 N. W. Rep. 909; *Rowland* v. *Murphy* (Texas), 1 S. W. Rep. 658; *Neier* v. *Railway Company* (Mo.), 1 S. W. Rep. 387. It is therefore submitted that, even if no question could arise as to the illegality of the loans made by the corporation to its stockholders, the averments of the bill admitted by the demurrer would be sufficient to convict these defendants of a breach of trust, rendering them responsible for the losses to the corporation thereby incurred.

The defendants claim that the American Casualty Insurance and Security Company comes within the exception contained in *Code*, Art. 23, sec. 69, is founded upon the facts, that its corporate title designates it as a *security*, as well as an *insurance* company, and that, availing itself of the provisions of section 113 of the said Article, it has included among its corporate purposes, the purpose " to *advance* money, securities and credits upon any property, real, personal or mixed." These, it is argued, constitutes it a corporation " to *loan* money on real or personal property." It is respectfully submitted that this contention is unsound for *three* reasons :

1. The class of corporations excepted in section 69 are obviously not *all* corporations which have *the power* under *any* circumstances whatever to lend money upon the security of real or personal property, but those only which are formed for *the purpose* of lending money, *and nothing else*, upon such security. That such is the intention of the law is evident, not only from its language, but from section 104 of the same Article, which enacts that " all loans by said corporations shall be made *in money and not otherwise*," and declares void any obligation or security issued to any borrower by such a corporation, in lieu of money. The language of section 113 being that the corporation therein mentioned may " advance money, *securities and credits* upon any property, real, personal or mixed," it seems plain that a different class of corporations is

contemplated in that section from those mentioned in sections 69, 18 and 104.

2. Section 56 of the same article provides that "no corporation shall possess or exercise *any* corporate powers except such as are conferred by law or such as shall be *necessary* to the exercise of the powers so acquired." Construing, in the light of this general rule of interpretation, the powers conferred by section 113, we find the corporations therein mentioned, authorized *not to lend*, but to *advance* money upon the securities mentioned. Now an "advance" of money *may* or *may not* be a "*loan*," but when it is a loan at all, it is a loan of *a special kind*. The term implies the payment *before it is due* of that which the party "advancing" will or may become bound to pay *at some time* or *upon some contingency in the future. Powder Co.* v. *Burkhardt,* 97 U. S. 110, 117; *Cooper* v. *Cooper,* L. R. 8 Ch. App. 813, 824. The clause in question must be read in connection with those immediately preceding which authorize the corporation contemplated "to receive on storage, deposit or otherwise, merchandise, bullion, specie, plate, stocks, bonds, promissory notes, certificates, contracts or other property, and to take the management, custody and charge of real or personal estate or property." There can be but little room for doubt that the meaning of the Legislature was to authorize such a corporation to "advance" to its bailors, depositors or *cetteux que trustent* that revenue from their property of whatever kind placed in its keeping or entrusted to its care, and which revenues it would at the proper time collect and hold for their benefit.

3. We have already noted that the exception in 69, while it is made to embrace *three* out of the *nine* kinds of corporations mentioned in section 18, and included in class 5, embraces *one* out of the *three* kinds of corporations included in class 16, by section 29; the other two of these three being "trust companies and guarantee companies;" it is evident, upon the well-recognized principle of construction *expressio unius est exclusio alterius,* that the Legislature *did not intend* to permit loans to their stockholders to be made by trust companies or by guar-

antee companies, although such loans *were* allowed in the case
of savings institutions. It will be found, however, that the
purposes and powers enumerated in section 113 are precisely
those purposes appropriate to trust and guarantee companies
and the powers they usually possess and exercise.

4. It is further submitted that the provisions of section 113
were not applicable to the American Casualty Insurance and
Security Company, and that its attempt to acquire and exer-
cise the powers of a Security Company was not effectual in
law, because it *was* a "corporation incorporated  *   *   *
for the insurance of the lives of persons," and therefore *not*
one of those authorized to include in its certificate of incorpo-
ration the objects and purposes enumerated in that section.

*The Statute of Limitations.*—On this point there is little need
to say anything. In no State is the principle better settled
that in Maryland that the Statute of Limitations does not run
in favor of a defaulting trustee under an express trust while
his trust continues. *Needle* v. *Martin*, 33 Md. 509; *Weaver* v.
*Leiman*, 52 Md. 708; *Owens* v. *Crow*, 63 Md. 491. And it is also
perfectly clear that the acceptance of the office of director in
a corporation constitutes such an officer a trustee of this char-
acter. *Hoffman S. C. Co.* v. *Cumberland C. and I. Co.*, 16 Md.
456; *Cumberland C. and I. Co.* v. *Parrish*, 42 Md. 598; *Booth*
v. *Robinson, supra.*

It is true that in *Sperin's Appeal*, 71 Pa. St. 11, above noted,
the defense of limitations was sustained to a bill not filed until
more than six years after certain of the defendants had ceased
to be directors ; but,the doctrine of·this case, even if it be con-
ceded to be law, in nowise affects the responsibility of these
defendants, since none of them ceased to be directors until
January 10, 1893, and the bill was filed July 17, 1895. Inde-
pendently, however, of any such consideration as this, it is re-
spectfully submitted that by the great weight of authority
limitations, as such, does not constitute a defense to a suit in
equity of the same character as this one. *Brinckerhoff* v.
*Bostwick*, 99 N. Y. 185; *Cockrill* v. *Cooper*, 86 Fed. Rep. 7;
*Williams* v. *McKay, supra,* 46 N. J. Eq. 25; *Williams* v. *Page*, 24

Beav. 654-661. It would be, indeed, a monstrous doctrine which granted immunity to this class of trustees, merely because they succeeded in concealing from their *cetteux que trustent* their own failures of duty for more than the statutory period of limitations, especially when we remember that every day of such concealment of itself constituted a new breach of trust.

*Richard M. Venable* and *T. Wallis Blakistone* for the appellees:

The bill places the right to recover on two grounds: First. The illegal action of the directors in making loans in violation of article 23, section 69 of the Code, forbidding corporations to lend to their stockholders. The earlier part of the bill, down to paragraph 20, in addition to certain historical matter setting forth the organization and the charter of the company, election of directors, etc., is devoted to the statement of this ground of complaint. Second. The negligence of the directors in the administration of their duties. Paragraph 20 and following are devoted to the statement of this ground of complaint.

The contention of the appellees is: 1st. That section 69 does not apply to the American Casualty Insurance and Security Company because that company was incorporated under article 23, section 113 of the Code. Section 69 refers to corporations, the creation of which is antecedently provided for, and has no application to a company organized under section 113.

2nd. The second contention is that, even if section 69 might otherwise be applied to this corporation, it is not applied to it because this corporation is excepted out of that section by the clause at the end of it: "This section shall not, however, apply to any building or homestead association *or any association for the loan of money on real or personal property* or to savings institutions. In the case of the *Boston and Albany Railroad Company, etc., v. Henry A. Parr, etc.,* Judge Morris, sitting in the United States Circuit Court for the District of Maryland, has passed upon this specific question, and has filed an opinion in that case.

Several considerations were urged below to show that this company was not within the exception contained in section 69, article 23 of the Code. Thus it is claimed: 1st. That the exception applied only to corporations formed for the purpose of lending money and *nothing else* upon the security designated. To establish this contention reference is made to section 104 of the Code. This particular section is under the general heading, "Building or Homestead Associations," and was passed in 1878, to prevent the abuse of such corporations lending their notes instead of money to members of the association. The section clearly applies only to "Building and Homestead Associations," and it cannot be claimed that we are to interpret section 69 of the Code, passed in 1868, by a section passed ten years thereafter.

2nd. An attempt is made to distinguish between a *loan* of money and an *advance* of money on securities. Judge Morris is entirely correct in saying that there is no such difference as the terms are employed in these sections of the Code. There are, doubtless, circumstances and cases may be found which discriminate between these two terms, but they have no bearing upon the interpretation of these sections.

3rd. It is further argued, that the corporation in this case was a corporation "for the insurance of lives of persons," and therefore not one of those authorized to include in its certificate of incorporation the purposes enumerated in section 113. To maintain this contention resort is had to section 127. In that section for the purpose of simplifying the regulations in reference to insurance companies a general definition is given of a life insurance company "within the meaning of this article." But the term "life insurance companies" is not used in section 113. A different term is employed, to wit, " companies for the insurance of lives of persons." Whether for some of the purposes of the Code the present corporation might or might not be construed to be a life insurance company, it is not necessary to discuss here. It is clearly from its charter, filed with the bill, not a company "for the insurance of lives of persons."

4th. It is further claimed that the powers granted in section 113 are those of a trust or guarantee company, and that such companies are clearly not excepted in section 69.

The weakness of this contention is that the powers authorized to be conferred upon insurance companies by section 113 do not include the most important and usual powers of trust companies, that is, to be trustees under deeds and wills, and to act as executors, administrators, etc.

Furthermore, the liability under this section is the liability to creditors and not to the corporation or its officers. The receivers of a corporation cannot civilly bring suit against the directors for acts committed in violation of law. *Briggs* v. *Spaulding*, 141 U. S. 146 and 150.

The rule is that where directors of a corporation do acts in violation of the charter or of law, it does not make them liable to civil suit by the stockholders of the corporation (or its receivers); although if there be an independent ground of suit (*e. g.*, negligence in administration), the charter or law restricting or regulating the acts of directors may contribute to furnish a measure of the conduct (to wit, negligence) of the directors. *Briggs* v. *Spaulding*, 141 U. S. 146. This case furnishes a remarkable application of this rule. The directors, who were there sued, had acted in violation of law in three distinct respects, and these acts of violation of law were the acts which wrecked the corporation. Nevertheless, it was admitted (page 146) that the violations of law did not constitute a ground of suit. Negligence was the true ground, and the case is decided on the ground of negligence with little or no reference to the violations of law.

The bill in the present case seems to make the alleged violation of law a distinct ground of suit. This point is of importance in another aspect. It is hereafter contended that the allegation of negligence made in the bill is insufficient. This being so, the whole ground of action falls, and therewith the suit must collapse, even if section 69 does apply to this corporation, and if the directors violated the law.

Further, the liability of the directors in this case is not al-

leged with sufficient definiteness. Section 69, even if appli-
cable in the present case, forbids loans to stockholders and
makes liable therefor *"officers who shall make it or who shall
assent thereto."* The allegation does not come up to this re-
quirement.

Paragraph 19 does not come up to the requirements of
proper pleading, because it does not allege the specific direc-
tors who assented to the loans or the specific loans to which
they assented. *Fisher, etc.*, v. *Graves*, 80 Fed. Rep. 590;
*Briggs* v. *Spaulding*, 141 U. S. 132.

*Second.* The second ground, on which it is claimed that the
defendants are liable, is negligence in the discharge of their
duties as directors.

The demurrer raises the question as to whether or not this
is sufficiently and properly alleged in the bill of complaint.
The allegations on this subject are to be found in paragraph
20 of the bill, and are as follows: "20. That in additon to
the illegality of the said loans, and their prohibition by the ex-
press terms of the charter of the said corporation, the said
loans constituted investments of its funds, unsuitable to its
business, unreasonably hazardous, insufficiently secured, and
such as no ordinarily prudent man, endeavoring conscien-
tiously to discharge his duty as a director thereof, would
have sanctioned or approved; and the facts relating thereto,
and establishing the impropriety in a commercial sense thereof,
could have been ascertained by all of its hereinbefore-men-
tioned directors by the exercise of such reasonable vigilance
and activity as were imperatively demanded of them by their
obvious obligations as such directors."

It is quite important to bear in mind that the demurrer does
not raise the question as to what degree of care directors of
corporations must exercise in the discharge of their duty. An
elaborate argument was made below on this question, but the
point really raised by the demurrers is one of pleading, and the
position is taken that whether the degree of care to be exer-
cised by directors is great or small, there is no sufficient alle-
gation of negligence of any kind in the bill.

The defect in the bill is that the allegations do not make the charges of negligence against the directors specifically, but makes it against the board of directors as a body or class, and the law does not make them responsible as a body or class, but it makes only those who participated in the negligence individually responsible.

This specific point was raised in the case of *Fisher and others, Receivers,* v. *Graves and others,* in the United States Circuit Court for the Southern District of New York, and was there decided by Judge Wheeler. *Fisher and others* v. *Graves,* 80 Fed. Rep. 590.

The fatal defects in the allegation in this case are two :

1. The suit is brought against a minority of the directors, those residing in Maryland. There is no specific allegation that any one of these directors, or that this minority as a class was guilty of negligence ; the allegation is against the whole board as a body or class ; when in law the directors are not responsible as a body or class, but are responsible individually. It might be true that all of the directors here sued, being a minority, might have opposed and disapproved the alleged negligent acts. If so, they would not be liable. The rules of pleading require the exclusion of this possibility by an averment that these particular directors assented.

2. There is no allegation that the directors were guilty of negligence or knew of any negligence, but acts of negligence are alleged, and it is then averred that the facts existed from which they ought to have known of the negligence. This does not comply with the requirements of pleading, but both the participation and knowledge should be alleged. This is the substance of Judge Wheeler's opinion.

Paragraph 20 of the bill, above cited, does not allege that any specific director or person made the loans, or that the board made them, and the only thing to connect the allegations with previous allegations is the word "said" before *loans.* To which of the loans does "said loans" apply—to all of them ; to those made before the defendants were directors, to those barred by limitation, or to those paid off? If this be

sufficient to incorporate into this averment the previous one as to the making of the loans, its omission is not cured ; for, as has been seen, no definite person or persons have previously been alleged to have made them or to have known of them. Indeed none of the defendants have been anywhere in the bill charged with knowledge of the loans.    It is attempted to charge them with notice by giving an account of protests against these loans made prior to their election, but directors are not bound to make an examination of the books and papers of the company, even during their term of office. *Briggs* v. *Spalding*, 141 U. S. 132; *Warner* v. *Pennoyer*, 82 Fed. Rep. 181.

The allegation does not say that any one of the defendants, or any other person or persons, was negligent in making the loans, or in not knowing of the loans ; but that the loans were improper, and the directors might by proper vigilance have discovered the impropriety.    The negligence charged is a failure to discover the impropriety of loans, which the defendants are neither charged with having made or having known of.

3. The allegation stripped of verbiage and making it refer to previous allegations, is that certain loans, some of which are theretofore specified to have been made by the finance committee, with the approval of the board of directors, were improper in a commercial sense, and that all of the directors might have discovered not the *existence* of the loans but the *impropriety* by proper vigilance.  This is not a sufficient charge of negligence.    It charges no one of the defendants specially with negligence in making the loans ; it does not say that any one of the defendants knew of the loans ; it merely says that all the directors might or should have ascertained the "facts relating thereto, and establishing the impropriety in a commercial sense thereof."    This is exactly what JUDGE WHEELER says is the substance of the allegations, and adds, most justly, that this falls "far short of any allegation of such negligence as would make him liable."

On the indefiniteness and inadequacy of the allegations of this bill, reference is made to *Williams* v. *Hilliard*, 38 N. J.

Eq. 373. See also 3 *Thompson on Corporations*, sec. 4128; 137 Ill. 509; *Nix* v. *Miller*, 57 Pac. Rep. 1084; *Shea's case*, 1 Lea (Tenn.), 319; *Bird* v. *Magowan*, (N. J. Eq.), 43 Atl. Rep. 278.

*George Leiper Thomas* filed a brief on behalf of Henry A. Parr, one of the appellees.

FOWLER, J., delivered the opinion of the Court:

The American Casualty Insurance and Security Company became insolvent and was placed in the hands of receivers by a decree of the Circuit Court of Baltimore City on the 23rd of November, 1893. By order of Court the receivers have instituted several suits, among others the one now before us, to hold the directors of the company personally liable for negligence in the performance of their duties. While proceedings of this character are not frequent, the law appears to be well settled, in this State at least, that a Court of equity has jurisdiction to entertain a bill filed by a corporation to enforce the personal liability of directors for the negligent performance of their duties, and that the corporation or its receiver is the proper and primary party to complain and call the directors to an account. *Booth* v. *Robinson*, 55 Md. 419. The demurrer to the bill therefore is not based upon the theory that a Court of equity has no jurisdiction over such a case as the bill seeks to make, but the jurisdiction is admitted and the objection is that the allegations charging negligence and breach of duty are, (1) not sufficiently definite; (2), that they are, as made, mere inferences of law, and (3), that, independent of a liability for negligence in the performance of their general duties, the directors are not civilly liable for investments made in violation of law.

In order to ascertain what are the foundations and object of this bill let us look at the bill itself. In several of its paragraphs it is alleged that grossly and obviously illegal investments of the funds of the company were made by the directors, whereof every member of the board had constructive, if not actual notice from the records of the corporation itself; sec-

ondly, it is alleged that they made investments of its funds not only contrary to law, but that such investments are "unsuitable to its business, unreasonably hazardous, insufficiently secured, and such as no ordinarily prudent man, endeavoring conscientiously to discharge his duty as a director thereof, would have sanctioned or approved; and the facts relating thereto, and establishing the impropriety thereof, in a commercial sense, could have been ascertained by all of its directors by the exercise of such reasonable vigilance and activity as were imperatively demanded of them by their obvious obligations as such directors." In a paragraph of the bill, prior to those we have just referred to, it is alleged that the executive committee, composed of five directors, adopted a resolution protesting against loans which had been made to William E. Midgeley, a stockholder, declaring that such loans are prohibited by the laws of this State, requesting that *such* loans be returned, and that in the future no other loans be made to any stockholder of the company. At a subsequent meeting of the Board of Directors on the 28th of July, 1891, this action of the executive committee was overruled and disapproved of. The members of the board comprising the executive committee thereupon, and because their protest was disregarded, resigned, and in their places the defendants were elected as follows: Messrs. Knott, Littig and Abell on the 28th of July, 1891, and Messrs McDonald and Parr on the 27th of October same year. It is also alleged that at various times after the adoption by the board of the resolution refusing to respect the protest of the executive committee, and before the annual meeting of the stockholders held January 10, 1893, "many large loans were made by said corporation, through its finance committee, with the sanction and approval of the board of directors, in direct *violation of the laws of the State of Maryland and the terms of its charter*, and *in disregard of the said last mentioned protest of its former executive committee.*" Among the loans *thus alleged to have been made* were loans to ten individuals or firms whose names and the dates of loans are given amounting to over $500,000. It is further alleged that subsequent

to and in addition to the loans above mentioned, from time to time other loans giving the dates and amounts, amounting to, at least, an equal sum were made in the same manner and with like violation of the law of the State to the firm of Beecher, Schenck & Co. ; that said firm became insolvent and there was a loss resulting of nearly three hundred thousand dollars. In addition to these sweeping and specific allegations the bill further alleges that the several directors who were elected in July and October 1891, and are named as defendants in this proceeding remained as such directors during the full term for which they were respectively elected, or so long as the corporation continued to do business and are responsible to the corporation or its receivers, the plaintiffs, for all losses incurred by it, through, or by reason, or in consequence of loans or investments of its funds made in violation of its charter, and without such due and reasonable regard to its interest as an ordinarily prudent and careful man would have shown in the conscientious discharge of his duties as its director ; and that such among them as ceased to be directors before some or any of the said loans or investments so resulting disastrously to the said corporation has been made, are yet responsible for the consequences thereof, when such subsequent loans were made by the agency or through the procurement of directors or officers of the corporation whose unfitness for their respective offices had been already established by their concurrence in or assent to similar violation of its charter or other dereliction of duty on their part in the past, and who were so elected to the offices which they thus abused without full disclosure on the part of their former associates therein of the facts relating to such previous breaches of duty, which facts were either known to the said retiring directors, or could have been, and would have been ascertained by them, had they made, as it was their duty to make, an ordinarily diligent inquiry into the management and affairs of the corporation during the time of their official connection therewith." Among the directors who are thus charged with culpable negligence are the defendants in this case. But it must be remembered that the question of

fact whether they are thus guilty of the negligent performance of their duties is not before us on this appeal. The sole question now to be considered is whether the bill makes such a case as requires an answer. The demurrer was sustained by the learned Judge below, and the plaintiffs have appealed. ·

We will, then, consider whether the bill states a good ground of action arising from an alleged breach of general duty by defendants as directors ; and second, whether the loans alleged to have been made to stockholders were made in violation of section 69, Art. 23 of the Code of Public General Laws. First, however, let us briefly refer to the general principles relating to the duty of directors.

Ever since the year 1742, when the leading case of *Charitable Corporations* v. *Sutton*, 2 Atk. 400, was decided by LORD CHANCELLOR HARDWICKE, the general principles relating to this subject there announced by him have been generally recognized. In the case of *Booth et al.* v. *Robinson et al.*, 55 Md. 419, JUDGE ALVEY, delivering the opinion of this Court, says that in the English case just cited the liability of directors to corporations for breaches of duty amounting to breaches of trust is first fully and accurately defined. The following language of LORD HARDWICKE is quoted : "Those who are named by corporations to have the direction of their affairs are held to the same care and diligence as factors or agents. And they are answerable not only for any fraud and gross negligence which they may be guilty of, *but also for all faults that are contrary to the care required of them.*" What then is the care which is required of directors ? There ought to be no difficulty about the answer to this question. Directors are selected by the stockholders to manage the concerns of the corporation, and it would seem, therefore, to require no authority, nor indeed more than the bare statement of the fact, that, as LORD HATHERLEY said in *Land Co.* v. *Lord Fermoy*, L. R. 5 Ch. 770, "if the directors sleep instead of being awake, their being asleep could not exempt them from the consequences of not attending to the business of the company." It is not of course to be expected that the directors shall attend to the

current business, but they must, at their peril, give such atten-
tion to and so manage the concerns of the company that they
may be able at all times to know what their executive officers
and other agents, as well as their fellow directors are doing,
and how they are acting in respect to the funds and property
of the corporation.   In *Williams* v. *McKay*, 40 N. J. Eq. 189,
CHIEF JUSTICE BEASLY said : "I entirely repudiate the notion
that this board of managers could leave the entire affairs of
this bank to certain committeemen, and then when disaster to
the innocent and helpless *cestuis que trustent* ensued, stifle all
complaints of their neglect by saying, we did not do these
things and we know nothing about them.   *   *   *   The
neglectful acts in question cannot be regarded by the Court
as isolated instances, for they run through the whole period of
the life of the institution, and thus evince a systematic and
habitual disregard of the company's charter, and a very strik-
ing indifference to the security of the money held in trust by
them."   To the same effect is *Wilkinson* v. *Dodd*, 40 N. J.
123; 1 *Morawetz Priv. Corp.*, sec. 522; *Horn Silver Mining
Co.* v. *Ryan*, 42 Minn. 196.   In *Williams* v. *McDonald*, 42 N.
J. Eq. 392, speaking of the liability of a director, it is said:
"It is not essential to prove that he acted fraudulently or that
he derived any benefit from the loan ; it is sufficient, if there
was culpable lack of prudence or failure to exercise with ordi-
nary care his functions as *quasi* trustee of the funds of the
bank, by which loss was sustained."   It was held in the same
case that directors will be held liable if they participated in the
prohibited acts which led to the loss or by their negligence
their associates were either not restrained or enabled to do
those acts complained of.   But it is unnecesssary we think to
prolong this opinion by a multiplication of authorities to estab-
lish the general proposition that directors, managers, trustees
of a corporation, by whatever name they may be called, are
required to perform their duties with skill and reasonable care,
that is to say with "the same degree of care and prudence that
men prompted by self interest generally exercise in their own
affairs" under like circumstances.   They are bound to give

such supervision as the situation and nature of the business requires and they will be held answerable not only for fraud, but for all faults that are contrary to the care required of them. *Booth* v. *Robinson, supra ; Hun* v. *Carey*, 82 N. Y. 74; 1 *Morawetz Priv. Corp.*, secs. 552 and 557. It is not enough that they employ agents of good character and skill; their acts must be watched and scrutinized with such vigliance as a discreet business man would exercise over his own affairs. *Hun* v. *Carey, supra.* While, therefore, directors might not ordinarily be liable for a single act of fraud or crime of an officer or agent, they certainly should be held liable for a continuous course of illegal and culpably negligent action openly committed and easily detected, as that complained of here is alleged to have been. *Cutting* v. *Marlor*, 78 N. Y. 460. We think, therefore, we may safely adopt the language of the Chancellor in *Robinson* v. *Smith*, 3 Paige Ch. 222. He said : "I have no hesitation in declaring it as the law of this State that the directors of a moneyed or other joint stock corporation, who wilfully abuse their trust, or misapply the funds of the corporation, by which a loss is sustained, are personally liable as trustees to make good that loss, and *they are equally liable if they suffer the corporate funds or property to be lost or wasted by gross negligence and inattention to the duties of their trust.*"

Recurring to the allegations of the bill, what do we find ? Between June, 1890, and March 13, 1893, loans amounting in the aggregate to over a million and quarter dollars were made by the corporation to certain of its stockholders, some of whom were also its directors or officers. The bill specifically alleges that these loans were unsuitable to its business, unreasonably hazardous, insufficiently secured, and such as no ordinarily prudent man, endeavoring to perform his duties as a director thereof, would have sanctioned or approved. The defendants were elected as directors, according to the allegations of the bill in July and October, 1891, "and remained as such directors during the full term for which they were respectively elected, or so long as the corporation continued to do business." They, or some of them, were, at the very time

some of these loans were made, members of the board, and all of them occupied that position subsequent to the period when the board, of which some of their colleagues were members, authorized the illegal loans, which occasioned the protest and resignation of Messrs. Spence, Garey, Charles D. and William A. Fisher and Gill. In *Williams* v. *McKay, supra*, CHANCELLOR McGILL says, in determining the personal responsibility of directors for losses caused by their negligence, that they may not "relax vigilance and rely entirely upon officers and committees. A man of common prudence and skill   *   *   * would not be guilty of such unguarded confidence. He would from time to time acquaint himself with the manner in which such delegates were performing their duties   *   * so that he might determine whether the business methods were safe and proper." It appears from the bill that the alleged irregularities and improper and unsafe investments "were not things of secret occurrence and sudden development. They were such as must have been known to the defendants, if they gave even the most casual attention" to the affairs of the corporation. *Robinson* v. *Hall*, 63 Fed. Rep. 222. It seems to be impossible that the defendants, if they faithfully discharged the functions of their office, could have failed to have become acquainted with these alleged transactions. It is not for this Court, as the case is now presented, "to draw improbable deductions from the statements in the bill in order to shield these defendants from answering." *Williams* v. *McKay, supra*. On the contrary, while there can be no doubt that the claim of the plaintiffs to the aid of equity should be stated with reasonable accuracy and clearness, and that if his case be set out in a vague and indefinite manner, a demurrer will be allowed, yet it is well settled that Courts of equity are not "subject to those strict technical rules, which, in other Courts, are sometimes found in the way and so difficult to surmount   *   *   * The remedies here are moulded so as to reach the real merits of the controversy, and justice will be suffered to be entangled in a net of technicalities." *Mewshaw* v. *Mewshaw*, 2 Md. Ch. 12; *Ridgely* v. *Bond*, 18 Md. 450; *Crain* v. *Barnes*, 1 Md.

Ch. 156.   It has been often said that "the object of all plead-
ing is to give the parties notice of the ground of claim and de-
fense, and that when this is done the object of the rules of
pleading is attained."   *Crain* v. *Barnes, supra.*

The fifteenth section of the bill alleges that four of the five
defendants were, together with others, re-elected as directors
10th January, 1893, to serve for one year thereafter.   By the
nineteenth section it is alleged that during that year of their
service, namely, in January, February and March of 1893,
loans of large sums of money were made by said corporation
through its finance committee with the assent of the board of
directors in violation of the laws of the State, the terms of its
charter and the duty of its directors.   The dates and
amounts of these loans and the names of the persons or firms
to whom made are set forth.   By section 20, which we have
already quoted, *these loans* are characterized as unsuitable, un-
reasonably hazardous, insufficiently secured, and such as no
ordinarily prudent man, endeavoring conscientiously to dis-
charge his duty as a director, would have sanctioned or ap-
proved, and that *all* of the directors, thus including these de-
fendants, could, by the exercise of reasonable vigilance and
diligence, have ascertained the character of these loans.   Nor,
as will be observed, are we left to surmise as to whether the
defendants were in fact members of the board at the time these
loans were made, for it is alleged by section 22 that they "re-
mained as such directors for the full term for which they were
respectively elected."

The demurrer being to the whole bill, and as to all the de-
fendants, it is sufficient to say that it cannot be sustained, and
for this reason, four of them are alleged to have been members
of the board when the loans set out in section 19 were made,
and the remaining defendant, as well as the other defendants,
are, in section 23, alleged to have been guilty of negligence
in failing to ascertain and disclose facts which they either knew
or could have known which facts demonstrated the unfitness
of officers or directors, through whose agency such illegal
and improper loans were made, and by which such enormous
losses resulted.

We think, therefore, that there is enough alleged in the bill by way of charging specifically violations of duty on the part of all the defendants, to require them all to answer, especially if, as we will presently show, the alleged loans to stockholders are prohibited by law.

But it is suggested that the bill is defective, because it does not allege that all the defendants attended and participated in the various alleged meetings, at which the loans were authorized, and because the extent, if any, to which each director contributed to the loss, is not alleged. In our opinion such allegations are not necessary. It is sufficient to allege that the board of directors, of which the defendants are members, did the acts complained of; and upon demurrer all the directors are *prima facie* liable. "It is only after answers and evidence and on final hearing that the connection of the several defendants with the transaction in question, and the measure of the responsibility of each can be ascertained and established." *Williams* v. *McKay*, 46 N. J. Eq. 25. And in the case of *Charitable Corporation* v. *Sutton, supra,* the LORD CHANCELLOR said: "Another objection has been made that the Court can make no decree upon these persons which will be just, for it is said every man's  *  *  omission of his duty is his own default, and that each particular person must bear just such a proportion as is suitable to the loss arising from his particular neglect, which makes it a case out of the power of this Court. Now, if this doctrine should prevail, it is indeed laying the *axe to the root of the tree.*" If all are shown to be equally guilty of negligence, all are to be held equally liable. As we have said, this case is now before us on demurrer, but after the defendants have answered and testimony has been taken, each will be held liable for his own negligence, provided the proof justifies such a decree.

Another objection on which the demurrer is based is that the bill in its charges of culpable negligence states not facts, but inferences of law. But we do not think this objection is well taken. The act complained of must be definitely stated it is true, but it is sufficient to say, that it was such

o

an act as no ordinarily prudent man, &c., would sanction
or approve, and that the defendants were negligent in giving
their sanction to such acts.   A similar or substantially similar
method of pleading negligence is universally adopted in this
State.   And the general rule is well stated in *Clark* v. *Chicago, &c., Ry. Co.*, 28 Minn. 69; 9 N. W. 76, thus : " Therefore it has been generally settled by precedent and authority
that a general allegation of negligence or carelessness as applied
to the act of a party is not a mere conclusion of law, but is
a statement of an ultimate fact allowed to be pleaded."   Reference is also made to *Chitty on Pleading*, 650, &c.

In opposition to the views we have expressed the case most
relied upon is that of *Fisher et al.* v. *Graves*, 80 Fed. R. 590,
which grew out of the insolvency of this same company.   The
bill in that case makes substantially the same charges of
negligence that are made here.   But it is apparent from what
we have already said that we cannot adopt the conclusion
reached in that case, for the demurrer was sustained in spite
of the proposition laid down in *Briggs* v. *Spaulding*, 141 U. S.
132, that directors will be held responsible for losses resulting
from the wrongful acts or omissions of *other directors* or
agents, if such loss is a consequence of their own neglect of
duty, either for failure to *supervise the business* with attention
or in *neglecting to use proper care* for the appointment of
agents."   This undoubtedly is the correct rule, and it is
founded on fairness and justice.   But it does not meet the
whole case made by this bill, for the allegation is that losses
resulted *not only* from the wrongful acts of other directors,
which could by the exercise of *ordinary* diligence and prudence have been known to and disclosed by the defendants,
but that losses also are alleged to have resulted from their own
wrongful acts and omissions, for we have pointed out that the
allegation that the alleged wrongful acts were committed by
the board are, *upon demurrer*, to be taken as having been
alleged to have been committed by each member of the board.
*Wilkinson* v. *Dodd, supra; Williams* v. *McKay, supra*.   But in
addition to the above quotation the Supreme Court said also

upon this subject in the same case : "Without reviewing the various decisions on the subject, we hold that directors must exercise ordinary care and prudence in the administration of the affairs of a bank, and that this includes something more than officiating as figure-heads.    They are entitled  *    *    * to commit the    *    *  business to duly authorized officers, but this does not absolve them from the duty of *reasonable supervision* nor ought they be permitted to be shielded from liability because of *want of knowledge of wrong doing*, if that ignorance is the result of gross inattention."    It must be remembered that the case of *Briggs* v. *Spaulding, supra,* relied upon both by the learned Court in *Fisher* v. *Graves, supra,* and by the learned counsel for defendants in this case, was heard not upon demurrer but upon bill, answers and testimony. The principles of law announced in that case, we think, are those we have relied upon here.    It is true the directors in that case were exculpated on the facts of *that cas*e as disclosed by the testimony—but the Court at the same time most emphatically declared that a director cannot excuse himself because of a want of actual or personal knowledge of wrong doing of other officers or directors if such ignorance is the result of gross inattention on his part.

It has been suggested that the demurrer should be sustained, if for no other reason, because of the absence of necessary parties, to wit, certain directors who are not residents of this State.

The bill alleges that the defendants constitute all of the board of directors who reside in Maryland, and that all the other members of the board are non-residents of this State, except Henry W. Slocum, who is dead, but who was a non-resident in his life-time and whose personal representatives are such non-residents now.    If such an objection be valid the result would be that no suit could be maintained, for the board is composed of persons who reside respectively in New York, Illinois and Maryland.    According to the contention, the Courts of this State have no jurisdiction unless the New York and Illinois directors are made parties to the suit here.

And if suit should be brought in the Courts of New York, the Maryland and Illinois directors must, according to the same contention, be parties there.   But how could our Courts get jurisdiction of the non-residents ?   They cannot be summoned, nor will an order of publication go against them in a suit like this, which, as we have seen, is brought to enforce a personal and individual liabllity.   They cannot be summoned, for such process does not go beyond the limits of the State.   Nor will an order of publication avail, for such process applies only to proceedings *in rem*, while this is a proceeding *in personam*, and the decree, if any can be entered, must be of the same nature. In the case of *Worthington* v. *Lee*, 61 Md. 542–543, the non-resident defendants were " only served by publication " and it was said that " it is essential to the effective character of the decree that the parties against whom it is made be within the jurisdiction and reach of the Court.   *   *   *   *   Being a mere personal decree, to have effect beyond the jurisdiction of the State where it is rendered, it must be founded either upon personal service of process or upon a voluntary appearance."   In *Glenn* v. *Williams*, 60 Md. 115, it is said, JUDGE ALVEY delivering the opinion of the Court, "that in a proceeding where the defendants are sought to be bound by a judgment or decree *in personam*, no constructive notice by publication, or *actual service of process beyond the State* will have any effect to give the Court jurisdiction over the party. *Pennoyer* v. *Neff*, 95 U. S. 714."   See also *Grover* v. *Radcliff*, 66 Md. 517; *Miller's Equity Procedure*, sec. 153 and notes. By the Act of 1896, ch. 38; (Art. 16, sec. 114, Supplement to Code, 1890–1900, p. 66), it was provided that if a copy of the order of publication be served on a non-resident as therein directed it shall have the same effect as a publication whether such non-resident be within or beyond the limits of the United States.   It is not supposed that it was intended by this enactment to give equity Courts jurisdiction of non-residents in proceedings *in personam*, but that, as was said in *Long* v. *Home Ins. Co.*, 114 N. C. 469, the method of service prescribed by the Act of 1896 " is a convenient and probably a

more sure way of bringing home to the non-resident the notice
which formerly was made solely by publication   *   *   *   *
but that the service of process in another State is valid *only in
those cases in which publication of the process* would be valid."
As we have already said, however, the actual service of pro-
cess beyond the limits of the State cannot give our Courts
jurisdiction over the persons of non-residents in actions *in
personam.   Glenn* v. *Williams, supra; Worthington* v. *Lee,
supra; Miller's Equity*, pages 157–159.   We think, however,
the jurisdiction of a Court of equity is fully recognized and
declared in the case of *Booth* v. *Robinson, supra*, to entertain
a bill against a portion of the directors individually. In *Fisher*
v. *Graves, supra*, cited and relied on by the defendants, the
proceedings was against some of the directors, but no objec-
tion was ever raised to this feature of the bill.   In *Atty.-Genl.,
The Corporation of Poole*, 1 Craig & Phillips, 28, it was urged
that a part of the governing body of a corporation could not
be proceeded against in the Court of Chancery, but that all
who took part in the transaction complained or should be co-
defendants, but LORD CHANCELLOR COTTENHAM held to the
contrary.   He said " Upon this point LORD HARDWICKE'S
authority in the *Charitable Corporation case* is of the highest
value.   It was urged that, as the injury had arisen from the
misconduct of many, each ought to be answerable for so much
only as his particular misconduct had occasioned; but LORD
HARDWICKE said   *  *   *   *   if upon inquiry, there should
appear to be a supine negligence in all of them, by which a
gross, complicated loss happens, I will never determine that
they are not all guilty, nor will I ever determine that a Court
of equity cannot lay hold of *every breach of trust*, let the per-
son guilty of it be either in a private or public capacity."   In
cases of this kind, continues LORD COTTENHAM, " where the
liability arises from the wrongful act of the parties, each is
liable for all the consequences, and there is no contribution
between them, and each case is distinct, depending upon the
evidence against each party.   It is, therefore, not necessary to
make all parties who may more or less have joined in the act

complained of." The Lord Chancellor also cites the case of *Atty.-Genl.* v. *Brown*, 1 Swan. 265, in which he says LORD ELDON overruled a demurrer based upon a similar objection. In *Wilson* v. *Moore*, SIR JOHN LEACH, M. R., reiterated the general principle that all parties concerned in a breach of trust are equally liable and that there is, in such case, no primary responsibility. He held, therefore, that the plaintiffs had a right to proceed against such of the parties guilty of the act complained of as they think fit." See also *Stainbank* v. *Fernley,* 9 Sim. 556; 2 *Perry on Trusts*, sec. 877, note 4. And so we held in *Duckett* v. *Bank*, 86 Md. 403. " Every viola- tion by a trustee of a duty which equity lays upon him, whether *wilful or fraudulent or done through negligence, or arising through mere oversight or forgetfulness, is a breach of trust.* There is *such instance* no primary or secondary liability as respects the parties guilty of or participating in the breach of trust, because all are equally amenable." That directors of corporations are trustees of the bodies represented by them, and as such come within the rule guarding or restraining transactions between trustees and *cestuis que trustent* is a famil- iar principle. *Coal Co.* v. *Parish*, 42 Md. 598; *Booth* v. *Rob- inson, supra.*

Without further discussion of this question, we conclude that the bill here demurred to states a case which the defend- ants will be required to answer, and that the decree sustaining the demurrer to the bill must be reversed.

We might rest our decision upon what we have said above; but as the case must be reversed for the error we have pointed out and remanded, it will be necessary to dispose of the re- maining question, which is, whether the loans alleged to have been made by the directors to stockholders are for that rea- son in violation of law and the charter of the corporation.

By section 69, Article 23 of the Code of Public General Laws, it is provided that no loan of money shall be made by *any such corporation* to any *stockholder* therein " and that if any such loan shall be made to any stockholder, the officer or officers who shall make it, or who shall assent thereto, shall

be jointly and severally liable for all the debts of the corporation contracted before the making of the said loan, to the extent of double the amount of said loan." It further provides that this section shall not apply " to any building or homestead association or any association for the loan of money on real or personal property, or to any savings institution." It is clear that the words " any such corporation " mean any and every corporation incorporated under Art. 23—except the three classes mentioned in the above exception. The question, therefore, is, whether this company is included within the exception, and may, therefore, lawfully make loans of money to its stockholders on real and personal property ? The contention is that it is within the exception, because it is an association of the kind described in the exception, inasmuch as (1) it was incorporated under section 113, Article 23 of the Code which gives power to the company " to advance money, securities and credits upon any property real, personal or mixed on such terms as shall be established by the charter or by-laws of such corporation;" (2) because even if the prohibition in section 69 prohibiting loans to stockholders might otherwise apply to this corporation it is excepted out of that section by the plain language of the exception itself, it being an " association for the loan of money on real and personal property." Counsel on both sides have argued very ingeniously to support their respective views, but the meaning and scope of the exception, which after all is the question to be decided, appears to us to be if not apparent, yet measurably so. It is conceded that the only language in the exception about which there can be any difficulty is the phrase " any association for the loan of money." When these words are read in connection with those which precede them, we think it is clear the Legislature intended to declare a general policy for Maryland corporations incorporated under our general law, that *all* of them, all *such* corporations, should be restrained from loaning the corporate money to stockholders, except building and homestead associations, and associations which like them are formed for the purpose of loaning money to members or stockholders. The

importance of such a provision is manifest. The fact that such loans can only be made on the security of real or personal property we all know would, in many cases, be very little protection to the corporation or its creditors if the directors, the finance or executive committee or their friends, should happen to be the borrowers. In such cases the " real or personal property" offered as security would not be closely scrutinized, and the *chief* reliance would be placed on the personal security of the borrower. If, as contended, every corporation, no matter for what other or how many other purposes it may be incorporated, because it is also authorized to loan money on real or personal property, is placed beyond the salutary provisions of section 69, that section will have but a very limited if any application whatever. Indeed it will be in the power of all corporations formed under our general law to render that important section absolutely nugatory, because whenever the stockholders and directors prefer themselves to borrow the money of the company rather than to use it for some more legitimate purpose, as for instance, to pay creditors, they may have their charter amended, if not originally so drawn, so as to authorize loans on real or personal property. The suggestion that this obvious result would not follow, because corporations would not be willing to limit their power to lend except on real or personal property is, we think, without force, for it is not possible to say what corporations will or will not do, if its managers are unfaithful and are willing to sacrifice corporate interests for their own advantage. Nor would it necessarily follow that such a provision would so limit the loaning power, for this result could be obviated by a further provision.

Reliance is also placed on the contention that by section 113, Article 23, under which it is claimed this company was incorporated, authority is given "to advance *money, securities and credits* upon any property real, personal or mixed." In the first place it is contended by the defendants that section 69 cannot apply to this company because that section refers only to corporations, the creation of which is antecedently

provided for, and can have no application, therefore, to companies organized as this was under the subsequent section 113. But, as we have said, it is apparent that section 69 applies to *all* corporations formed under Article 23, except those excluded by the exception. Are corporations formed under section 113 so excluded? If so, they must be because they are in the class of corporations mentioned in the exception in sec. 69—that is to say associations "for the loan of money on real or personal property." We have already said, however, that associations thus designated are those, which like building and homestead associations, are formed for the purpose, or principally for the purpose, of loaning money to members and stockholders. If this be so, of course, this company is not within the exception, for, assuming that there is no distinction to be drawn between the word loan as used in section 69 and the word "advance" as used in section 113, the advance or loan of money which this company is authorized to make by section 113 and by its charter, is only one of the many, and by no means the principal purpose of its creation. But we think there is a distinction and a wide one, between these words as used in the two sections mentioned. It may be conceded that if the question was, what is the difference between *loaning* and *advancing money* on real or personal property, the answer would be, there is no substantial difference. But that is not the question before us. The question we have is, whether the *two words* as used in the *two sections* are identical in meaning and effect. We think they are not. The words "loan of money" as used in the exception contained in section 69 *must* be held as applicable to *every* corporation incorporated under the general law, except corporations formed for the purpose or whose principal purpose is to loan money to members and stockholders—otherwise, as we have shown, this most important and salutary provision will be absolutely nullified. But in addition to this view we think it is apparent from the plain language of the exception that *only* corporations which are authorized to loan *money* on real or personal property are excepted from the prohibitions of sec. 69. This

company, however, both by séc. 113, under which it is claimed to be incorporated, and by the terms of its charter, is authorized to "advance money, *securities and credits* upon any property real, personal or mixed." It would seem to be clear, therefore, that these two sections refer to different classes of corporations. In our opinion the exception in sec. 69 refers to corporations, such as building and homestead and other corporations, the principal business of which is to loan *money* on the security therein mentioned, while section 113 contemplates corporations of an entirely different character, such as insurance, guarantee and storage companies, incorporated thereunder, which are authorized to. make advances on real property committed to their charge or on personal property deposited or stored with them.

Our conclusion, therefore, is that the loans, if so made to the stockholders, as alleged in the bill, were made by the defendants not only in violation of their general duty as directors, but were also made in violation of law. It only remains to be said that, in this proceeding, it is not claimed that the penalty prescribed by sec. 69 for its violation can be recovered. Its provisions are relied upon merely to furnish the standard of duty, and the evidence of wrong doing. *Briggs* v. *Spaulding*, 141 U. S. 668.

The questions of limitations we presume is not relied upon by defendants, as it was not discussed either in their briefs or oral arguments.

> *Decree reversed with costs, and cause remanded for further proceedings.*

(Decided January 16, 1901.)

McSHERRY, C. J., dissented and delivered the following opinion in which BOYD and SCHMUCKER, JJ., concurred:

The bill in this case was filed by the receivers of an insolvent corporation against some of the persons who had been its directors, to recover from them certain large sums of money alleged to have been wasted ·and lost by the negligence and

illegal conduct of several boards of directors. The charges of the bill will be alluded to later on.

Speaking with reference to the case made by the bill, if there was no illegality in the loans mentioned in the complaint, there is no liability under *sec. 69, Art. 23 of the Code.* If these loans were lawful there is no liability at all unless the directors who made them or sanctioned them were negligent in making them or in suffering them to be made. The liability prescribed by *sec. 69* is not that which the bill seeks to enforce, and the question of illegality is only incidentally involved as tending to reflect on the question of negligence. If the loans were illegally made and no loss had ensued, no liability would have been incurred. If the loans were legal and loss followed because of negligence in making them or in suffering them to be made, then those persons who negligently made them or sanctioned them after they had been negligently made, or negligently suffered them to be made would be liable and could be required to restore the sums which they had by their negligence caused the company to lose.

There ought to be no dispute about the substantive law of this case. If directors of a corporation make loans in violation of *sec. 69* they are declared to be liable, not merely for the sums lost by such loans, but for the debts then due by the corporation to the extent of double the amount of the loans. If they negligently invest the money of the corporation or suffer it to be negligently invested, they are liable for their negligence if that occasions a loss. But who are liable? Is a director liable simply because he is a director; or is he liable because he has done something prohibited, or negligently done something not prohibited or sanctioned the doing of the one or the other? Obviously to be liable at all he must do something he ought not to do, or he must omit to do something he should do. It is, therefore, from his acts or his omissions that his liability arises. His omissions to be a ground of liability must be his own and not some other person's omissions, though the act of another, in that it is not prevented when it could have been prevented, may be the occasion of his omis-

sion.    His sanction of a negligent act would be his affirmative
act of commission.    In no way is he liable except for what he
himself does or omits to do, or for what he sanctions when
done by others, or for what by his negligence he permits
others to do.    In any of these contingencies it is apparent that
his liability is referable, in some form, to his own conduct.

Now, with what are the *defendants* in this case charged ?
If they are liable in this proceeding at all it is for things *they*
have *done* or *sanctioned* or *omitted* to do ; and not for wrong-
ful or negligent acts which other persons may have done with-
out the participation of the *defendants* in some form, or with-
out their sanction.    This inquiry to be answered requires that
an analysis of the bill of complaint be made, because the con-
troversy as presented is on a demurrer to the bill, and that
demurrer challenges the legal sufficiency of the bill's aver-
ments.    If these averments contain no specific charge against
*these defendants*—if *these defendants* are not charged with some-
thing for which the bill on its face makes it appear they are,
in law, liable—they are under no obligation to answer and by
an answer to set up exculpatory facts, because it is a funda-
mental principle applicable without exception to every form of
judicial proceeding in jurisdictions where the common law is
recognized, that no man can be required to answer until he is
specifically charged with something.    Vague, indefinite or
argumentative averments demand no reply.    This bill affords
a striking illustration of the wisdom of the rule just stated, be-
cause every allegation it contains may be conceded to be true,
and yet not one of the defendants may be liable to the plaintiffs.

The bill was filed by the receivers of The American Cas-
ualty Insurance and Security Company—an insolvent corpor-
ation—against six persons who at different times had been
directors of the company.    The bill contains 23 paragraphs.
It seeks to hold these six persons liable for losses sustained
by the corporation by reason of the bankruptcy of sundry in-
dividuals to whom certain of its money had been loaned.
Some of these loans had been made before *any* of the defend-
ants became directors, some were made before *two* of the six

were elected and some *after* two of them ceased to be direc-
tors.   The corporation was formed on January 10, 1890,
under the general corporation laws of Maryland.   The cer-
tificate of incorporation provided that there should be eleven
directors, but also contained a clause which permitted an in-
crease in this number.  Not one of the defendants was amongst
the eleven designated in the certificate, nor was any one of
them included in the number chosen in January, 1891.   In
December, 1890, and in January and April, 1891, loans aggre-
gate something over thirty-seven thousand dollars were made
to the president, who was a stockholder, by the finance com-
mittee with, as is alleged, the subsequent sanction of the board
of directors.   In May following these loans were declared by
the executive committee to be investments of the funds of the
corporation not in accordance with the laws of Maryland, but
clearly and positively prohibited by *sec. 69, Art. 23* of the
Code.   This section is set forth in the margin.*   The protest
of the executive committee was not heeded and five of the
eleven directors resigned on July 28, 1891, and on the same
day Messrs. Knott, Abell and Littig, three of the defendants,
were elected, and on October 27th, Messrs. McDonald and
Parr, two of the defendants, were elected ; but there is no aver-
ment whatever that any of these five thus elected to fill the
places of those who had resigned, accepted the position or
entered upon the discharge of the duties thereof for the year
1891.

By the 16th paragraph of the bill it is alleged that addi-
tional loans were made in disregard of the laws of Maryland
and the terms of the company's charter, between August 10,
1891, and December 5, 1891, to the amount of $557,928.33 ;

---

* "69. No loan of money shall be made by any such corporation to any
stockholder therein, and if any such loan shall be made to any stock-
holder, the officer or officers who shall make it or who shall assent thereto
shall be jointly and severally liable for all of the debts of the corporation
contracted before the making of the said loan to the extent of double the
amount of said loan; this section shall not however apply to any building
or homestead association or any association for the loan of money on real
or personal property or to any savings institution.

and it is further alleged that these loans were made by the finance committee "with the sanction and approval of the board of directors." There is no averment, however, either in express terms or by implication, that any of the defendants—three of whom had been elected in July, two of whom had been elected in October and one of whom had not yet been elected at all—were then acting as directors or had accepted that position. Without the co-operation of the five defendants who were chosen in 1891, but who are not alleged to have accepted the position until after the stockholders meeting in January, 1892, there was a majority of the board competent to act and to sanction these loans and that majority did in fact act when the protest of the executive committee was disregarded in May, 1891. In June, 1892, the number of directors was increased to thirteen and two persons, not defendants in this case were chosen, and "thereupon," says the fourteenth paragraph of the bill, "accepted their said election and assumed and professed to discharge the duties of their said office." In January, 1893, the number of directors was increased to fifteen and Mr. Jackson, one of the defendants, was for the first time selected and Messrs. Abell and McDonald were dropped. Of these fifteen directors four of the six defendants formed part, and it is alleged in the fifteenth paragraph of the bill that "all of these persons so chosen at the said last mentioned meeting (that is in January, 1893), accepted their said elections and assumed and thereafter professed to discharge the duties of their said offices."

It is alleged by the nineteenth paragraph of the bill that after the stockholders meeting of January, 1893, the corporation, through its finance committee, *with the assent of the board of directors*, made other loans in violation of the laws of Maryland, the terms of its charter and the duty of its directors whereby at least the sum of $293,694.52 was lost.

By the twentieth paragraph it is averred that all these loans antecedently spoken of constituted unreasonable hazardous and insufficiently secured investments of the company's funds; and "the facts relating thereto and establishing the impropriety

in a commercial sense thereof could have been ascertained by all of its hereinbefore mentioned directors by the exercise of such reasonable vigilance and activity as were imperatively demanded of them by their obvious obligations as such directors." It is alleged in the twenty-first paragraph that by reason of the unbusinesslike and unfaithful management of the affairs of the corporation "by its successive boards of directors" the corporation became hopelessly and notoriously insolvent, and receivers were appointed under a bill filed in November, 1893. Paragraph twenty-three is set out in the margin.*

When reduced to their final analysis the various paragraphs of the bill assign three grounds upon which the defendants are alleged to be liable, and these are : *First,* that the loans were prohibited by *sec. 69, Art. 23 of the Code ; secondly,* that no exposure of this illegality was made by any of the officers or directors though every member of the board had constructive, if not actual notice from the records of the corporation of this alleged illegality and these breaches of duty " on the part of

---

* 23. And the complainants charge that the said several respondents to this suit, who were directors of the said corporation, were responsible to the said corporation, and are now responsible to the complainants as its receivers for all losses incurred by it through, or by reason, or in conse- quence of loans or investments of its funds made in violation of the terms of its charter, and without such due and reasonable regard to its interest as an ordinarily prudent and careful man would have shown in the conscientious discharge of his duties as its director, and that such among them as ceased to be directors, before some or any of the said loans or investments, so resulting disastrously to the said corporation had been made, are yet responsible for the consequences thereof, when such sub- sequent loans were made by the agency or through the procurement of directors or officers of the corporation whose unfitness for their respective offices had been already established by their concurrence in or assent to similar violation of its charter or other derelictions of duty on their part in the past and who were re-elected to the offices which they thus abused without a full disclosure on the part of their former associates therein of the facts relating to such previous breaches of duty, which facts were either known to the said retiring directors, or could have been, and would have been ascertained by them, had they made, as it was their duty to make, an ordinarily diligent enquiry into the management and affairs of the cor- poration during the time of their official connection therewith.

*such* of the former directors as were then re-elected *and as had been guilty thereof*; " and *thirdly*, that the loans made by the finance committee with the sanction of the board of directors were negligently made. This latter ground may be strictly true without a single one of the defendants being answerable. And this is so, because there is not an allegation or the semblance of an allegation in the bill connecting a single defendant with anything done or anything left undone which ought to have been done by him whereby the loss occurred. I will consider these three grounds in the inverse order of their statement. But first, it may be well to bear in mind that there, are three classes of claims for which *all* the defendants are sought to be made answerable, and these are, *first*, losses which arose on loans made *before* they became directors ; *second*, losses which arose on loans made whilst *some* of them were directors, and *third*, losses which arose on loans made after *some* of them had *ceased* to be directors.

I have said it may be strictly true that loans were negligently made by the finance committee with the sanction of the board of directors, and yet that not one of the defendants would be liable under the averments of the bill. Liability, if founded on negligence, must have its origin in some act of negligent commission or negligent omission of the person proceeded against. Now the bill may be searched from beginning to end and not even an intimation, much less not a specific charge, will be found alleging that any one of these six defendants ever voted for these loans or by any affirmative act ever sanctioned them. It may be closely studied throughout and not a charge will be discovered that any one of these six defendants had the slightest actual knowledge that the loans had been made. There is, it is true, an alternative allegation in the 18th paragraph, that every member of the board had constructive if not actual notice of the *illegality* of the loans. I am not dealing with that question now, but with the averment that the loans were negligently made and that that negligence was sanctioned by the board. There is, then, as to these defendants, no direct charge that they or any of them either made the

loans or sanctioned the making of them. As their liability, if liable at all, does not arise from the mere fact of their being directors—as it is dependent upon personal conduct in the office of director—and as the averments relate to the board of directors and not to particular members of that board; there is obviously no charge of any affirmative act of commission by the defendants, unless the allegation that these loans were made with the sanction of the board of directors is the equivalent of an assertion that they were made with the sanction of the defendants. There might be some reason for such an assumption if the six defendants had constituted the *whole* board of directors ; but when the bill shows on its face that the very first alleged improper loan was made with the sanction of the board of directors at a time when not one of the defendants was a member of the board, the term board of directors as used throughout the bill cannot be treated as synonymous with defendants. At no time did these defendants ever constitute a majority of the board of directors. It is, therefore, quite possible that every averment which charges that the loans were made with the sanction of the board of directors is perfectly consistent with the hypothesis that they were not made with the sanction of the defendants ; and this possibility becomes a certainty when it is borne in mind that there is no pretence that the defendants ever knew of the existence of the loans. To sue a minority of a board of directors for a liability which, if it exists at all, exists because of the conduct of the *individuals* themselves ; and in that suit to hold them accountable, not upon an averment that *they* did the acts which form the basis of the liability, but to hold them upon an allegation that a *board* of which they were the minority did these acts, is to say they are liable, not for what they did but for what the board of which they formed only a small part had done, *unless* they show by way of defense that they are not liable—a doctrine which inverts the plainest precepts of pleading. Confessedly, the liability of the director is individual and not collective, but you make a collective charge, though sueing only a minority, and you say that such a charge is suf-

ficient to require the particular persons you have singled out
as defendants, to show that they do not come within the scope
of your general averment.   No precedent can be found for
such a course.   Why should the plaintiffs be relieved from the
duty to make a distinct and definite allegation against the de-
fendants?   If it be true that these defendants did participate
in making or sanctioning the loans which are asserted to be
illegal or wrongful or negligent, why ought not the plaintiffs to
say so?  If the defendants did not participate in these transactions
why should the plaintiffs be allowed under a vague and indefi-
nite averment, at least as consistent with the non-participation
of the defendants as with their participation, to force them into
a defense when at best but an argumentative or a conjectural
charge has been made against them ?   No case has been cited
and none can be found where such a bill as this has been sus-
tained.

In addition to what has been said, the bill itself by a dis-
tinct allegation shows that all its averments are just as con-
sistent with the hypothesis that the defendants are not liable
as with the assumption that they are responsible, for the fourth
paragraph alleges that the certificate of incorporation of the
Casualty Company declared that "The by-laws of this com-
pany may provide that less than a majority of the board may
constitute a quorum."   Here, then, is an unequivocal asser-
tion that less than the whole board and even less than a ma-
jority of the board constituted a quorum of the board, and a
quorum of the board was authorized to act as the board.   So
on the face of the bill it is clear that acts done by the board
of directors may have been acts done by a mere minority of
the whole board, and still those acts would have been the acts
of the board, though not a single one of the defendants had
participated in them.   How, then, can it be said, when you
allege that a loan was sanctioned by the board, that such an
allegation means that the loan had been sanctioned by the
whole board or by any particular members of the board or by
the defendants, since you yourself show by this provision of
the charter that a minority could have sanctioned the act and

the sanction thus given could be accurately described as the sanction of the board? If, under this provision of the certificate of incorporation, it be true that *all* the acts alleged in the bill could have been done by less than the whole board or by less than a majority, it is obvious they could have been done without the aid, co-operation or participation of any of the defendants; and if the defendants are not charged with having been concerned in them, is not the bill essentially defective? How can you, under any known rule of pleading, hold the defendants for that with which they have not been charged?

If this record goes back to the lower Court and the defendants answer and deny every allegation of the bill, what will the plaintiffs be required to prove before a liability can be fastened on any one of these six defendants? Will they not have to show that the *defendants* did something or omitted to do something before the *defendants* can be held liable? This cannot be doubted for a moment. If it should be shown that the board of directors other than these defendants did the negligent or the illegal acts alleged; or that the board other than these defendants sanctioned these acts, can it be pretended the defendants would be responsible? If they can only be held accountable when *proved* to be guilty of negligence or illegal conduct, does not the rule of pleading imperatively require that *they* shall be *charged* with what is intended to be proved? Should the case be brought here on the state of facts just above suggested—that the acts had been done by the board other than the defendants—would not this Court be compelled to say that the term "board of directors," or "directors," as used in the bill of complaint, did *not* include *the defendants?* If so, it is obvious that the same term does not necessarily *now* include the defendants. It must be remembered that the question before the Court upon the demurrer is purely a question of pleading, involving only the sufficiency of the bill's averments. The demurrer admits that everyone of these loans was made with the saction and approval of the board of directors as alleged in the bill, and you insist that such an averment is sufficient to include the *defendants* and to charge

*them* with having sanctioned and approved the loans. Suppose after answers filed the evidence adduced should show that each loan had been sanctioned and approved by a resolution adopted by a majority of the board of directors. There could be no more formal sanction than that. But suppose it also appeared that each defendant voted and protested against each loan. Would you say they could then be held under the averments of the bill? If you say no, then you must also say that though it is true the loans were sanctioned and approved by the board of directors, *the defendants* did not approve them, and therefore the charge that the *board* sanctioned the loans does not imply that the *defendants* sanctioned them. You are then driven to admit that the terms used in the bill may be and are true without the defendants being liable, and when you acquit them of liability you confess that your first position, viz., that the term "board of directors" did include them is incorrect, as it does *not* include them.

What is the legal consequence of overruling a demurrer to a bill in equity? Does not the Court say in effect to the plaintiff, if you prove the facts set out in your bill as you have alleged them you will be entitled to the relief you seek against the defendant? Undoubtedly this is so. Now, the plaintiff does prove the facts alleged as alleged, viz., that the loans were negligently made and were sanctioned by the board of directors, or by the directors, but it is shown at the same time that the defendants, who constitute a minority of the board, protested against the loans. The plaintiff could not then get relief against the defendants because though the facts are true as alleged, that is, though it is true the loans *were* made with the sanction of the *board* of directors or with the sanction of the directors, those facts make no case against the *defendants*. This is perfectly obvious. But the defendants would not be exculpated because the allegations of the bill were *untrue*. They would be exculpated notwithstanding the allegations of the bill were *true*. If they can be exculpated notwithstanding the allegations of the bill are true, then the allegations of the bill *may* be true—the loans *may* have been negligently made

and *may* have been sanctioned by the board or by the direct–ors—and yet the defendants would not be liable, unless they are to be held liable in spite of their protest against the loans being made.    Is not that tantamount to saying that the aver–ments of the bill do *not* make out a case against *the defend–ants?*    If so it would be error to overrule the demurrer, be–cause by overruling the demurrer you assert that the averments *are* sufficient.    This is not a case where the averments are sufficient until disproved.    It is a case where there may be no liability even though the averments *are* proved.    It is the failure to negative this contingency by distinctly charging the *defendants* with negligence or misconduct that makes the bill defective.    And the bill is obviously defective if its averments. may be true as made without the defendants being liable at all.

The rule of pleading is stated in *Mitford's Eq. Pl.*, mar. pg. 41, in these words :    " Whatever is essential to the rights of the plaintiff and is necessarily within his knowledge, ought to be alleged positively and with precision."    And in a note to 6th American edition it is said :    " In setting forth such right and title (that is, of the plaintiff) the governing principle is that so much certainty must pervade the statement as to pre–vent the defendant from being taken by surprise.    He must be permitted to know explicitly what the complaint against him is, and not be compelled to guess it under the form of a general charge.    There must be such a specification as will enable him to meet the alleged fact by a direct issue and thereby countervail the general charge.    But after alleging such specific act or fact the plaintiff need not set forth numerous circumstances merely going to make out or corroborate such specification."    Pleadings in chancery should consist of aver–ments or allegations of fact and not of inference and argument. *Chambers* v. *Chambers*, 4 G. & J. 420; *Story*, *Eq. Pl.*, secs. 27 and 257.

In the leading case of *Booth* v. *Robinson*, 55 Md. 419, the rule as to the certainty of the allegations against a director of a corporation was distinctly announced.    Upon reference to the original record in that case it will be found that the bill

contained the following averments : " Your orators charge
that each and all of said actings and doings on the part of said
Moncure Robinson, John M. Robinson, Samuel M. Shoe-
maker, Thomas Kelso and the Baltimore Steam Packet Com-
pany and their confederates (to your orators at present unknown,
but whom they pray to be permitted to make parties defendant
when discovered) were purposely done in utter disregard of
their fiduciary relations as directors and as shareholders of
said Powhatan Steamboat Company * * * * and that
each and all of said confederates are severally and jointly liable
to your orators for the consequences resulting from such
wrongs and injuries, &c." In the opinion of the Court on
*page 441* where the conduct of two of the defendants, who
were directors in both the Steam Packet Company and the
Powhatan Company, was under discussion, it is said : "They,"
these two directors, " were the chosen agents of both " com-
panies ; " and to be successful in any attempt to impeach the
validity of their acts, with a view of making them personally
responsible, either to the corporation or to the stockholders,
there must be *distinct charges of misconduct,* fully supported
by proof." And the following cases are cited : *Adams Min-
ing Com.* v. *Senter,* 26 Mich. 73; *U. S. Rolling Stock Co.* v.
*A. & G. W. R. Co.,* 34 Ohio St. 450.

In *Wilkinson* v. *Dodd,* 40 N. J. Eq. 123, a case much relied
on in the argument and in the briefs, a bill was filed by the
receiver of the Newark Savings Institution against all the
managers of that institution and against the executors of a
person who had been a manager. The proceeding was insti-
tuted to recover from the defendants the losses which resulted
from the illegal use of the securities and of the moneys of the
institution by the managers. There was a demurrer interposed
on this ground amongst others, that the bill charged the de-
fendants as a body with acts of negligence in all of which
each of them could not have participated. It was in answer to
this position that the language relied on by the appellants was
used, viz. " It is only after answers and evidence and on the
final hearing that the connection of the several defendants

with the transactions in question and the measure of the responsibility of each defendant can be ascertained and established." But that case presented a situation widely different from the one now in hand. Where a *whole* board is sued, an allegation against *all* is necessarily an allegation against *each* member of the board ; but where only a minority of a board is sued, an allegation against the *board*, but not against the *whole* board, does not necessarily include the persons sued ; because the act complained of may be the act of the board by being the act of the majority, without involving a single one of the minority who have been sued. When a director is sued " his co-operation," said the Court in *Van Dyke* v. *McQuade*, 86 N. Y. 52, " must be affirmatively shown." Accordingly in *Sammon* v. *Richardson*, 30 Conn. 360, which was an action on the case against directors of an insurance company, the declaration averred " that the said directors, the *defendants*, for the purpose of giving the company a fictitious credit * * * did falsely and fraudulently represent, &c."

In *Spering's Appeal*, 71 Penn. St. 11, a bill was filed by Joshua Spering, assignee of the National Safety Insurance and Trust Company, against sixteen persons who had been at different times directors of the company and against the administrators of two other persons, then deceased, who had also been directors. The bill as originally filed contained general allegations, but by amendments, it was finally charged that the *defendants*, during their respective terms of office, had entire control of the affairs of the company ; that the frauds charged continued from 1854 until April 8th, 1861, and that *each defendant* participated in them, or by negligence permitted and encouraged them. Upon this state of the pleadings the Court proceeded to inquire into the question of the liability of the directors and laid down the principles previously announced by LORD HARDWICKE in *Charitable Corp.* v. *Sutton*, 2 Atk. 400, and subsequently adopted and followed by this Court in *Booth* v. *Robinson, supra.* In *Spering's Appeal* there were what this Court in *Booth* v. *Robinson* said there ought to be, " distinct charges of misconduct ;" and distinct charges against the *defendants*.

In the case of *Fisher et al. Receivers*, v. *Graves*, 80 Fed. R. 590, the precise averments of the bill in this case were held to be insufficient to charge Henry W. Slocum, one of the original directors in this same Casualty Company, with actionable negligence, because those averments merely charged " neglect by the directors, without mentioning him."

The allegations thus far considered are clearly insufficient to implicate the defendants ; and the only other averment of an affirmative act is that which is contained in the seventeenth paragraph of the bill. That paragraph alleges that a pretended settlement was made on December 30th, 1892, of the antecedent loans ; that a colorable and simulated repayment of those loans was apparently made by the several debtors by and with the connivance and through the procurement of " divers—among the officers and directors of said corporation," &c. Who were the officers and who were the directors that made this settlement ? Does the allegation that " divers— among the officers and directors " made this settlement mean that the *defendants* made it ? Certain it is that not one of the defendants is charged by name or description with being involved therein. Are they bound to deny when there is no accusation ? Obviously not.

What has been said in regard to alleged affirmative acts, acts of commission as I have designated them, is alike applicable to the theory of liability founded on imputed negligent omission to act. The eighteenth and twenty-third paragraphs of the bill are constructed on this theory. It is not charged anywere that a single one of the defendants negligently omitted to attend a meeting of the board of directors, whereby the loans which resulted disastrously were permitted to be made ; nor that any one of them negligently omitted to do any act, which omission produced the loss. Indeed the framer of the bill seems to have studiously avoided making any charge against the *defendants*, but has levelled them all at the various boards of directors, though the liability, if any exists, is not a liability of the board, but is a personal liability of the individuals who were members of the board, and who, being mem-

bers, omitted to do what it was their duty to do.   Who were
the individuals that omitted to do what they ought to have
done? And what were the things which they left undone, but
ought to have done? *First*, according to paragraph eighteen
"no protest against and no exposure of" "the gross and
obvious *illegality* of the investments" was made "by any of
the officers or directors" until long after the annual meeting
held on January the tenth, 1893.   *Secondly*, according to the
twenty-third paragraph, because these loans were made "with-
out such due and reasonable regard to its interest as an ordi-
narily prudent and careful man would have shown in the con-
scientious discharge of his duties as director" of the córpora-
tion ; and as to such among the defendants "as ceased to be
directors before some or any of the said loans or investments
so resulting disastrously to the corporation had been made,"
it is averred that they failed to make a full disclosure of the
facts relating to previous loans, called previous breaches of
duty, "which facts were either known to the said retiring direc-
tors or could have been, and would have been ascertained by
them had they made" an ordinarily diligent enquiry into
the management and affairs of the corporation.   If the loans
alluded to in the 18th paragraph were *not* illegal then a failure
to protest against or expose their *illegality* was no omission of
duty.   The allegation that every member of the board had
constructive if not actual notice from the records of the cor-
poration of the *illegality* of the investments, is not an allegation
that any member of the board had *actual* notice either of the
existence or of the illegality of these loans.   It is simply a
charge that they all had constructive notice of what the books
of the corporation disclosed as to the *illegality* of the loans,
and consequently such constructive notice of the existence of
the loans as would be involved in constructive notice of their
*illegality*.   This question of illegality will be discussed later
on.   One other act of omission, set out in the 23rd paragraph,
but not in terms imputed to the *defendants* is, broadly, inatten-
tion—the lack of that attention in the discharge of the duties
of a director which a prudent and careful man would have

shown; and as respects the retiring directors their failure to disclose what they knew or could have known about other directors' alleged breaches of duty. Now, there is not a single averment that any of these alleged acts of omission set out in either of the two paragraphs under consideration, caused a cent of loss to the corporation. It is alleged that the defendants are responsible to the corporation and to the receivers " for all losses incurred by " the company, but not because the losses were incurred by *these* omissions of the *defendants*.

This branch of the case is completely settled by the opinion in *Briggs, Receiver*, v. *Spaulding et al*, 141 U. S. 132. That was a case where the receiver of a bank filed a bill against all the directors claiming to recover large sums of money which the bank had lost by reason of the negligent inattention of the directors and by their failure and omission to properly discharge their duties. The bill, amongst other things, alleged that the losses and the consequent failure of the bank were due to the misconduct of the officers and directors of the bank, and to the failure of the directors to perform faithfully and diligently the duties of their office; that by reason of the nature of their office and of the principles of the common law and under the provisions of the Revised Statutes of the United States, the directors were bound diligently, carefully and honestly to administer the affairs of the bank, to employ none but honest and competent persons to serve as officers ; to keep correct books of account and to see that the business was prudently conducted, and that the property and effects of the bank were not wasted, stolen or squandered. It was then charged that the directors utterly failed to perform each and every of their official duties and paid no attention to the affairs of the bank ; that they failed to hold or to call meetings, or to appoint any committees of examination, or to make personal examinations into the conduct and management of its affairs and into the condition of its accounts. It was further charged that all of the illegal acts of the president in effecting loans prohibited by law appeared on the books and might have been discovered by the directors by a proper examination, and that it was owing

to their negligence and inattention to duty that the president. was permitted to continue in office and to continue his mismanagement of the bank's affairs until it had become insolvent. MR. CHIEF JUSTICE FULLER in delivering the opinion of the Supreme Court states the object and ground of the controversy in this way: " In the language of the appellant's counsel the bill was framed upon a theory of a breach by the defendants as directors 'of their common-law duties as trustees of a financial corporation and of breaches of special restrictions and obligations of the National Banking Act.'" After narrating many of the facts, he says : " The theory of this bill is that the defendants are liable, not to stockholders nor to creditors, as such, but to the bank, for losses alleged to have occurred during their period of office, because of their inattention." Proceeding, the opinion declares that " no one of the defendants is charged with the misappropriation or misapplication of, or interference with, any property of the bank, nor with carelessness in respect to any particular property, but with the omission of duty, which, if performed, would have prevented certain specified losses in respect of which complainant. seeks to charge them.  *  *  *  *  *  Treated as a cause of action in favor of the corporation, a liability of this kind should not lightly be imposed in the absence of any element of positive misfeasance, and solely upon the ground of passive negligence, and it must be made to appear that the losses for which defendants are required to respond were the natural and necessary consequences of omissions on their part.  *  *  *  *  Nor is knowledge of what the books and papers would have shown to be imputed. In *Wakeman* v. *Dalley*, 51 N. Y. 32, JUDGE EARLE observed in relation to Dalley, sought to be charged for false representations in the circular of a company of which he was one of the directors. ' He was simply a director and as such attended some of the meetings of the board of directors. As he was a director, must we impute to him, for the purpose of charging him with fraud, a knowledge of all the affairs of the company? If the law requires this, then the position of a director in any large corporation,

like a railroad, or banking or insurance company, is one of constant peril. \* \* \* If the directors when actually cognizant of no fraud, are to be made liable in an action of fraud for any error or misstatement in such statements or reports, then we have a rule by which every director is made liable for any fraud that may be committed upon the company in the abstraction of its assets and diminution of its capital by any of its agents, and he becomes substantially an insurer of their fidelity. It has not been generally understood that such a responsibility rested upon directors of corporations, and I know of no principle of law or rule of public policy which requires that it should.' " With these principles in view it is obvious that the allegations of the eighteenth and twenty-third paragraphs of the bill are wholly insufficient to implicate the defendants in any way, or to fasten on them any responsibility whatever.

The averments of the 20th paragraph furnish no ground upon which the defendants can be held bound to answer. The allegation is that all the directors could have *ascertained* the facts relating to the loans and establishing the impropriety of them in a commercial sense, if ordinary vigilance and diligence had been exercised. The implication relied on is that the directors did not ascertain facts which they ought to have ascertained with regard to these loans ; and the conclusion suggested from that implication is that the defendants are liable because these facts were not ascertained. This if true would not make the defendants answerable. It is not alleged that *they* did not ascertain what they ought to have ascertained, or that having ascertained the facts they ignored them. The case of *Briggs* v. *Spaulding et al.*, *supra*, fully answers this paragraph.

The remaining ground of liability yet to be considered is that which alleges that the loans were illegal. If illegal they were illegal solely because within the prohibition of sec. 69, Art. 23 of the Code ; but if the corporation was one of those described in the proviso to that section, viz., a building association, or an association for the loan of money on real or

personal property, or a savings institution, then the prohibition was not applicable. It is clear that the Casualty Company, which was incorporated under the general law, possessed the powers which were conferred by *sec. 113 of Art. 23 of the Code;* and the question is whether it was such an association for the loan of money on real or personal property as the proviso to *sec. 69* exempts from the operation of the prohibition of that section. Now, *sec. 113* enacts that "any corporation incorporated under this article for insurance purposes, *except for the insurance of the lives of persons*, is hereby authorized to include in its certificate of incorporation as among other objects and purposes for which said corporation is formed, the following, that is to say * * * * to receive on storage merchandise * * * * and to advance money, securities and credits upon any property, real, personal or mixed on such terms and with all such powers of sale and other disposition thereof as shall be established by the charter, &c., &c."

Amongst the purposes included in the Casualty Company's certificate were those named in *sec. 113*—the precise language of the statute having been incorporated in the certificate. But it is objected that the Casualty Company was incorporated " for the insurance of the lives of persons," and therefore could not include in its powers the things authorized by *sec. 113*, and consequently that it did not come within the proviso to *sec. 69*, as an association for the loan of money on real or personal property; and further that the proviso to *sec. 69* has relation only to corporations the design of whose creation was to loan money to its stockholders.

The Casualty Company was authorized to issue a great variety of insurance and indemnity policies; but there is no provision anywhere in its certificate of incorporation permitting it to do a life-insurance business or to grant "insurance of the lives of persons." It had authority to make all the insurance connected with marine risks, the risks of transportation of freight, persons and passengers, and the risks of inland navigation; as well as to guarantee employers against claims for damages arising out of injuries to or deaths of em-

ployees and occasioned by the negligence of employers. In none of these instances was the life of a particular person insured, but the common carrier or the employer was afforded an indemnity in the event of his being obliged to respond in damages for a death attributable to his negligence. That was not an insurance of the lives of persons within the meaning of *sec. 113;* and if the company undertook to issue what was strictly a life-insurance policy it simply exceeded its charter powers.

It is obvious that the proviso to *sec. 69* will not bear a construction which restricts the application of that proviso to corporations created for the express purpose of lending money to its stockholders. The corporations excepted from the prohibition are building or homestead associations, any association for the loan of money on real or personal property, any savings institution, and now by the *Act of 1898, ch. 228,* any corporation receiving money on deposit or authorized by its charter to receive money on deposit. If *all* the excepted corporations do not belong to a class expressly created for the purpose of lending money to stockholders, it cannot be affirmed of the proviso that its design was to include that class only. This is self-evident. Now, whatever may be said of building or homestead associations it cannot be pretended that the design of the creation of a savings institution is to lend money to its stockholders only. The recent amendment of *sec. 69* by the *Act of 1898, ch. 228,* so as to include in the proviso any corporation receiving money on deposit or authorized to receive money on deposit, demonstrates that it never was the intention of the Legislature to restrict this proviso to the narrow limits which an exclusion of all corporations save those created for the purpose of lending to their stockholders would establish. A corporation which under the terms of its charter and under the provisions of *sec. 113* is expressly empowered to advance money upon any property, real, personal or mixed, as the Casualty Company indisputably was, is an association for the loan of money on real or personal property, unless an *advance* of money on real or personal property is

essentially different from a *loan* of money on the same prop-
erty. But to say that an authority to *advance* money on
property is not an authority to *loan* money on property is to
make a distinction where there is no difference; and there is
no difference because the one term is, as used in *sec. 113*,
simply the synonym of the other as used in *sec. 69*. And
this is the construction which JUDGE MORRIS adopted in the
case of *Bost. & Alb. Ry. Co.* v. *Parr*, in the Circuit Court of
the United States for the District of Maryland. JUDGE MORRIS
sustained a demurrer to the bill and his decree was affirmed
by the United States Circuit Court of Appeals, Fourth Circuit,
on the ground that the averments of the bill were insufficient.

As previously stated there are three distinct classes of losses
mentioned in the bill of complaint. Some of the losses oc-
curred when *none* of the defendants were directors, others hap-
pened when *some* of the defendants were directors, and the re-
maining ones took place after *two* of the defendants had ceased
to be directors. A part of the relief prayed is "that the
amount of loss suffered by the said corporation by reason of
the matters and things in this bill of complaint set forth may
be ascertained   *   *   *   *   *   and that the said several re-
spondents may duly account therefor to and with the com-
plainants and *pay* to them, as such receivers as aforesaid, *the
full amount of said loss*, so suffered, &c." Can such relief be
granted? This question has been distinctly answered in the
negative by the Court of Appeals of New York in several in-
stances. If these defendants are resposible at all they are re-
sponsible not for the same but for different losses. It is obvi-
ous that they are not answerable for any loss sustained *before*
they became directors, and it is equally obvious that losses
which occurred after any of them ceased to be directors and
which occurred by reason of the misconduct of directors other
than those who had retired, cannot be charged to the defend-
ants who had retired before the loans were made which re-
sulted in losses. Assuming that each of these defendants is
liable for some of the losses, there is no principle upon which
any of them can be held for the losses that took place *before*

they became directors ; and yet the bill seeks to recover from *all* of them the amount of these antecedent losses. Assuming that all of them with the exception of Mr. Jackson, are liable for the losses which befell the company between January, 1892 and January, 1893 ; yet the bill seeks to hold Mr. Jackson for those losses, though he did not become a director till· January, 1893. And assuming that all of the defendants except Mr. Abell and Mr. McDonald are liable for the losses occurring after January, 1893, still the bill endeavors to hold those two along with the other four for the losses which occurred by reason of loans made after Messrs. Abell and McDonald had retired. Precisely this situation was presented in *Dykmau* v. *Keeney*, 154 N. Y. 483. In that case a proceeding in equity was instituted by the receiver of the Commercial bank against certain persons who either had been directors of the bank or who were the personal representatives of deceased· directors·. The complaint alleged that these directors were such between April, 1886 and August, 1893, some during all that period of time and others during varying periods between those dates. The complaint charged *the defendants*, during the several periods while they were in office, with conduct which was negligent, wasteful and in violation of the statute in many respects, and averred that the result of all this had been the ruin of the bank. It showed that loans and discounts were made in excess of the amount allowed by law ; that losses were permitted to occur to an amount in excess of the undivided profits, thereby creating a deficit in the capital of the bank ;. that debts were suffered to remain without prosecution ; that in the calculation of profits for the purpose of declaring dividends, debts and the interest accrued and unpaid on the same were included ; that dividends on the shares of stock were made as from undivided profits, when in fact they were paid out of the capital stock
*   *   *   *   that loans were made to persons engaged in hazardous business enterprises, or upon pretended security known to be inadequate, and that they retained in office a cashier with knowledge that he was dishonest,·incompetent and guilty of a falsification of the books of the bank. One of

the defendants demurred to the bill on this ground amongst others that there was an improper joinder of causes of action. The demurrer was overruled in the Court below, but on appeal to the Court of Appeals this judgment was reversed and it was held that there had been an improper joinder of causes of action.    See *O'Brien & Cannon, Receivers*, v. *Fitzgerald et al.*, 6 App. Div. 509, affirmed on appeal 150 N. Y. 572.

Without recapitulating what has been herein stated, it seems to me the decree which dismissed the bill after sustaining the demurrer, was clearly right and that it ought to be affirmed. I am authorized by JUDGE BOYD and JUDGE SCHMUCKER to say that they concur in this opinion.

(Filed January 16, 1901.) ·